Kenneth Emmanuel
HARTLEY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 484–89, 485–89, 486–89 and 487–89.

Court of Criminal Appeals of Texas,
En Banc.

May 23, 1990.

Keith E. Jagmin, Dallas, for appellant.

Henry Wade, former Dist. Atty., John Vance, Dist. Atty., William Randell Johnson, Jerri Sims and Marshall Gandy, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

---

**DISSENTING OPINION DENYING APPELLANT'S MOTION FOR REHEARING**

CLINTON, Justice.

This cause presents one of those "unusual situation[s]" noticed by this Court in *Arnold et al. v. State*, 784 S.W.2d 372, 385–387 (Tex.Cr.App.1990). The facts of the case and an adumbrative account of evidence of the offenses are set out in *Hartley v. State*, 765 S.W.2d 883 (Tex.App. —Dallas 1989), as well as in *Arnold*, supra, n. 19 and accompanying text at 386.

After reviewing those matters, including that appellant pleaded not guilty by reason of insanity and expressed remorse for his actions, noting that parole law was not mentioned during voir dire but excerpting "one brief mention" by the prosecutor in jury argument, pointing out that the trial court gave a *Rose* "curative instruction," and contrasting the maximum punishments available with those actually assessed, the Dallas Court held "that beyond a reasonable doubt the submission of the parole law instruction did not contribute to appellant's punishment." *Hartley*, supra, at 884–885. Its analysis is also brief, *viz:*

"... Although appellant had no prior felony convictions, appellant's crime was *heinous.* The statement of facts consists of six volumes and 1,213 pages. We have quoted the only reference to the parole law heard by the jury, aside from the reading of the instruction itself. Regarding the *one count of sexual assault, on which the appellant received the maximum sentence,* although the complainant did not see a knife while being raped, the complainant knew he had a knife at other times ... Under these circumstances, *although appellant received the maximum sentence, ...* sub-

---

mission of the parole instruction did not contribute to appellant's punishment." *Id.*, at 885.[1]

That in its harm analysis the Dallas Court sought especially to justify maximum punishment for the least serious offense of which appellant was convicted begs a rationale.[2] Moreover, its analysis is at odds with our discernment in *Arnold* that "in such situations [jurors] seem to focus on the offense carrying the highest penalty, the others more or less falling in line below it." *Id.*, at 387.

In his opening argument on punishment first prosecutor predicted that the victims "will live with the terror of that night and the violation of that night for the rest of their lives," and asked the jury to recall "the testimony of the terror and the violation that you heard ... in determining the proper sentence for this crime." VI SF 1189. The closing prosecutor concentrated first on psychiatric testimony, particularly from Dr. James P. Grigson that appellant is a sociopath, a "con man," for which there is no cure. *Id.*, at 1206–1207. And in another vein there is more to her closing argument than the Dallas Court excerpted in its opinion, at 885, bracketed below; referring to an expert witness for appellant, the prosecutor introduced those remarks with rhetorical questions, *viz:*

"The second thing she said was, you have prisons to keep them away from us. Now, ladies and gentlemen, you tell me how bad an idea that is. *How soon do you want to see him out again?*

Oh, it's fine here in the courtroom with these lights and these bailiffs sitting over here. *But when do you want to see him walking down the street in your neighborhood when you're by yourself or your children are out?*

[Ladies and gentlemen, you leave this courtroom and you've lost all the control you have over that man. Every year you come down off of a life sentence, you're gambling with your safety and that of your families.

The judge read to you what the parole law is. All you can do is sentence him.] (Appellant's objection to "a comment on the parole law" is overruled.)

Ladies and gentlemen, I'm going to ask you to return life sentences in the cases that the law will allow you to do." *Id.*, at 1208–1209.[3]

Furthermore, during deliberations jurors puzzled over the complex situation created by four sets of charges and verdicts requiring separate assessment of punishment for each offense. They asked the trial judge to clarify whether the court would "enforce the larger of the four sentences given by the jury [or if] all sentences [are] combined for a cumulative total;" to which the court responded it was not permitted "to answer your question." See *Arnold*, at 386 n. 19, for reproduction of complete text of both note and response.

---

1. All emphasis here and throughout is mine unless otherwise noted.

2. This conviction for sexual assault of one victim is number F85–86934–JH in the trial court, our Cause No. 485–89. The indictment alleged aggravated sexual assault with a deadly weapon, towit: a knife. Based on the testimony of the victim in this cause that she never saw a knife during the assaults (IV SF 551), and apparently *sua sponte*, the trial judge submitted "simply the offense of sexual assault" (VI SF 1103; Tr. 58, 61).

The indictment for aggravated sexual assault of the other victim also alleged appellant used and exhibited a deadly weapon, to wit: a knife; though the issue was contested, that victim so testified and the jury believed he did. Each indictment for aggravated kidnapping following those sexual assaults similarly alleged a deadly weapon, to wit: a knife; both victims testified appellant obtained a different knife to accomplish kidnapping, and the jury implicitly found that he did. The jury assessed punishment less than maximum for such offenses, *viz:* sixty years for each aggravated kidnapping, forty years for aggravated sexual assault. The trial court let all sentences run concurrently pursuant to Article 42.08, V.A.C.C.P.

3. In concluding she asked the jury to remember: that one expert said appellant has "a deep-seated hostility towards women;" that another expert opined appellant is "capable of extreme violence of a sexual nature;" that Dr. Grigson told them he is "extremely dangerous. It will happen again." She characterized appellant as "a time bomb, waiting to go off;" she told the jury "you have the fuse in your hand. And it's not up to anybody now but you as representatives of this county." *Id.*, at 1209–1210.

So left to its own devices and the court's charges, the jury rejected both appellant's plea for probation in all cases and the prosecution's call for life imprisonment in three cases. And despite beholders' perceived heinousness of the offenses and experts' opinions as to character of appellant, not unexpectedly it settled instead for two terms of sixty years, one for forty years and one for twenty years. See *Arnold,* at 383, nn. 13 and 14, and 389, n. 24.

In my judgment, there are sufficient "indicia of factors reasonably conducing to affect minds of average rational jurors in their determination of punishment." *Arnold,* at 377. While it does not necessarily follow that consideration the jury gave the § 4 instructions here contributed to punishments actually assessed, the burden is on the State to demonstrate that such consideration did NOT contribute to it. Given the facts and circumstances of this cause, I adhere to the conclusions reached by the Court when we previously reviewed this very "unusual situation" (noting that PDR has been refused, *Arnold,* at 385), that a rational appellate court would be unable to determine and to declare beyond a reasonable doubt that the error did not influence the jury adversely to appellant, *Arnold,* at 377, that it made no contribution to punishments assessed against appellant. *Arnold,* at 387.

Accordingly, I would grant the motion for rehearing, grant review and reverse the judgment of the court of appeals as to punishments.

TEAGUE and CAMPBELL, JJ., join in this opinion.